IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ESTATE OF CLARENCE SIMS                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO.: 1:09CV32-A-D

THE CITY OF ABERDEEN, MS,
THE ABERDEEN HOUSING AUTHORITY, et al.                     DEFENDANTS

**JUDGMENT**

A bench trial of this matter was held February 22 and 23, 2011. The following constitutes the findings of fact and conclusions of law reached by this Court pursuant to Federal Rule of Civil Procedure 52:

*Findings of Fact*

Clarence Sims was a resident of the Aberdeen Housing Authority apartment complex. Initially, Sims was housed in Unit 173. Sims signed a one year lease beginning April 1, 2007 and ending April 1, 2008, for Unit 173. This unit was equipped with rails around the bath tub, but had no other handicap-accessible feature. Unit 173 was not one of the Housing Authority's designated "handicap" apartments.

Due to the deterioration of Unit 173, Sims was notified by letter that he was being transferred to another unit in the same housing complex. In the September letter, the Housing Authority did not inform Sims that his lease at Unit 173 was terminated, nor did it request that he sign a new lease for Unit 248 upon the transfer. Sims never signed a lease for Unit 248.

"Make ready repairs" were completed on Unit 248, the keys to that apartment were picked up on October 3, 2007, and Sims moved in thereafter. As part of the repairs to 248, bath tub rails consistent with what was offered at Unit 173 were installed. However, no hand rails were installed

on the front porch area. To get onto Unit 248's porch from the apartment door, Sims was required to navigate down a five and a half inch step. The height then from the porch to the sidewalk was four and a half inches.

On October 7, 2007, Clarence Sims was 69 years old. He had suffered two strokes - the first in 1984 and the second in July of 2007. These two incidences caused left-side paralysis which manifested in Sims dragging his left foot when he walked.

Sims suffered serious injuries resulting from a fall outside his residence at 248 Project Street on October 7, 2007.

*Conclusions of Law*

I.  Duty and Breach

A landlord is liable for injuries incurred as a result of latent defects which he knows about and conceals, or, being aware of the defect, fails to inform the tenant. Williams v. Briggs Co., 62 F.3d 703, 709 (5th Cir. 1995) (citing Loflin v. Thornton, 394 So. 2d 905, 906 (Miss. 1981)). Where the tenant knows of the defect or damage on the premises, however, no duty arises to the landlord with respect thereto. Loflin, 394 So. 2d at 906 (citations omitted). "In the absence of an express agreement between the landlord and tenant to make repairs, there is no obligation or duty upon the landlord to do so, and only where there is an agreement for specific repairs will a breach of that agreement impose liability for personal injury." Id.

The lease provisions from Sims' executed lease at 173 Project Street apply. See Order on Motion to Alter/Amend [128]. The Aberdeen Housing Authority did not notify Sims of the need to re-sign or execute an additional lease for 248. The Housing Authority did not inform Sims that the lease he signed in April of 2007 was terminated. Moreover, a new lease was not drawn up until

October 18, 2007, over two weeks after Sims was living in Unit 248. Accordingly, the Court holds the Housing Authority to the standards enumerated in the April 1, 2007 through April 1, 2008, lease.

Section Eighteen of the applicable lease provides:

> A. For all respects of this Lease and Grievance Procedure, a handicapped person shall be provided reasonable accommodation to the extent necessary to provide the handicapped person with an opportunity to use and occupy the dwelling unit equal to a non-handicapped person.
>
> B. Management hereby provides notice to Resident, that Resident may at any time during the term of this lease request reasonable accommodation for a handicap of a household member, including reasonable accommodation so that the Resident can meet lease requirements or other requirements of tenancy.

In earlier opinions, this Court held that this provision created a duty in the landlord to modify the dwelling unit if requested by the resident. To satisfy this burden, the Plaintiff had to prove by a preponderance of the evidence that Angela Fears told maintenance technician Barry Hubbard that Unit 248 needed modifying so that Clarence Sims could get on and off the porch better.[1] Angela Fears testified that she made the request of accommodation to Barry Hubbard outside apartment 173. Fears claims she asked Hubbard to move Sims' air conditioner to Unit 248 at that same time. However, between September 14 and October 3, 2007, records indicate Barry Hubbard was not dispatched by the Aberdeen Housing Authority to complete any work near Unit 173. Hubbard admitted to removing the air conditioner from Unit 173 while Fears was in that unit moving furniture to apartment 248. However, Hubbard contends that he never talked to Fears directly. Hubbard maintains that Fears spoke with Jimmie Sprat in the maintenance shop about the air conditioner, and that he never had a conversation with Fears about installing hand rails on the porch of Unit 248.

---

[1] The Court makes no determination as to whether even notifying Barry Hubbard, a lower-level maintenance man, of the need for an accommodation constitutes notice to the Aberdeen Housing Authority.

The Court finds that Plaintiff has not proved by a preponderance of the evidence that the request for a hand rail for Unit 248 occurred. The Court notes that the only testimony regarding such non-specific request was from Sims' daughter, Angela Fears. Based on the documentary evidence introduced, as well as the testimony of Barry Hubbard, the Court finds that the Plaintiff did not prove by a preponderance of the evidence that an accommodation request was made to the Aberdeen Housing Authority. Thus, the finding of the Court is that no request was made to the Aberdeen Housing Authority for a reasonable accommodation. Accordingly, the Housing Authority owed no duty to Clarence Sims under the lease provisions.

Even if the lease provision from Unit 173 was not applicable to the Unit at 248, and Mississippi common law applied, Defendant would still not be held liable as a landlord. Absent an express agreement to make repairs, "there is no obligation or duty upon the landlord to do so . . . ." Loflin, 394 So. 2d at 906. Thus, any action or omission on the part of the Aberdeen Housing Authority would have been discretionary.

> Pursuant to the Mississippi Tort Claims Act,
>
> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services.

MISS. CODE ANN. § 11-46-9(1)(g). This Court finds that whether or not the Aberdeen Housing Authority made any modification to Unit 248 was within that entity's discretion. Accordingly, its decision not to install the hand rails is protected by the governmental immunity provided for by the Mississippi Tort Claims Act.

Further, under Mississippi Code Section 11-46-9(1)(v), a governmental entity shall not be liable for any claim

> [a]rising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice . . . and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care.

Fears acknowledged she was aware of the steps from door to porch and porch to sidewalk on Unit 248 prior to Sims' moving in that unit. Sims' children testified that they were aware that their father had trouble navigating the step from the door to the porch and the porch to the sidewalk. Fears and Randle detailed steps they took to insure their father got onto and off of his porch safely. Fears acknowledged that she could not leave her father on the porch alone, and that he could not navigate onto the porch himself. Thus, Fears and Randle explicitly admitted the "danger" was open and obvious such that the Aberdeen Housing Authority is protected from liability by the Mississippi Tort Claims Act. See Miss. Code Ann. § 11-46-9(1)(v).

II. Causation

Even if the Court found that notice had been provided and the lease created a duty, the Court finds that Plaintiff failed to establish the requisite causation for liability on the part of the Aberdeen Housing Authority. Without deciding whether hand rails would have been a "reasonable accommodation," considering Sims' apparent inability to use his left hand, the Court determines that Plaintiff has failed to prove that even if hand rails were installed, the fall would not have occurred.

Darrell Randle testified that he sat his father down in a chair on the porch of Unit 248 to pull the car in the parking spot. When he looked back, his father had stood up and was falling off the

5

porch. Jimmie Langston, a neighbor who witnessed the fall, testified that Sims stood up, walked to the edge of the porch, and fell when he went to step down off the porch. Michael Turnipseed stated that Sims fell forward off the porch, but he did not see Sims attempt to take the step.

There was no proof introduced that Sims' accident would have been prevented had there been hand rails off the porch. Moreover, there is evidence in the record that some of the medicines Sims was prescribed caused dizziness and lightheadedness, especially upon elevating to a standing position. Accordingly, Plaintiff failed to prove by a preponderance of the evidence that Aberdeen Housing Authority's failure to install hand rails on Sims' porch caused his fall and attendant injuries.

*Conclusion*

Defendant is immune from damages related to the decision not to install hand rails on the porch of Unit 248. See Miss. Code Ann. §§ 11-46-9(1)(g), (1)(v). Alternatively, Plaintiff failed to meet its burden in proving by a preponderance of the evidence that the Aberdeen Housing Authority's failure to modify the porch by adding hand rails caused or attributed to Sims' accident.

After careful consideration of all evidence presented in this case, the Court finds for the Defendant. This case is closed.

SO ORDERED, this the 5th day of April, 2011.

                                                     **/s/ Sharion Aycock**
                                                   **U.S. DISTRICT JUDGE**